**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CONSERVIT, INC.,** | : | **CIVIL ACTION NO. 1:14-CV-0296** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEIMLER'S RECYCLING, INC., and** | : | |
| **GREG A. DEIMLER,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court in the above-captioned action is the motion (Doc. 6) of defendants Deimler's Recycling, Inc., ("Deimler's Recycling"), and Greg A. Deimler (collectively "defendants"), to dismiss the complaint (Doc. 1) of plaintiff Conservit, Inc., ("Conservit"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed (Docs. 10, 12, 16) and ripe for review. For the reasons that follow, the court will grant in part and deny in part defendants' motion.

**I.    <u>Factual Background & Procedural History</u>[1]**

Deimler's Recycling operates a recycling center and provides recycling services for Harrisburg, Pennsylvania, and all of Dauphin, Cumberland, and Perry Counties. (Doc. 1 ¶ 9). Greg Deimler is the principal of Deimler's Recycling. (<u>See</u>

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true and view them in the light most favorable" to Conservit. Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

id. ¶ 21).  In the spring of 2013, defendants decided to expand their scrap metal recycling business.  (Id. ¶ 10).  Lacking the capital to do so, defendants approached Conservit, a Maryland corporation also engaged in the metal recycling business.  (See id. ¶¶ 1, 11).  Conservit, interested in expanding its customer base, agreed to provide the requested capital.  (See id. ¶¶ 12-13).

Conservit and defendants executed the Scrap Metal Purchase Agreement ("SMPA")[2] on May 17, 2013.  Pursuant to the SMPA, Conservit agreed to advance to Deimler's Recycling an initial loan of capital in the amount of $400,000 ("initial

---

[2] Conservit attaches the SMPA and the SMPA Amendment to its pleading for the court's consideration.  In ruling upon a Rule 12 motion, district courts may consider "the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record," in addition to "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Defendants contend that the court may not consider the documents attached as exhibits to Conservit's pleading because their authenticity is in dispute.  (See Doc. 16 at 3 n.1).  The "undisputedly authentic" modifier, however, applies only to documents submitted by the movant in support of its Rule 12 motion.  E.g., Del. Nation v. Pennsylvania, 446 F.3d 410, 413 n.2 (3d Cir. 2006) ("Courts may consider matters of public record, exhibits attached to the complaint, and *undisputedly authentic documents attached to a motion to dismiss*.") (citing Pension Benefit Guaranty Corp., 998 F.2d at 1196); see also Pag-Daly City, LLC v. Quality Auto Locators, Inc., No. 12-03907, 2013 U.S. Dist. LEXIS 119637, at *18-19 (N.D. Cal. Aug. 22, 2013) (rejecting defendants' argument that court cannot rely on an unauthenticated document attached to a complaint because "at this stage, we must accept the allegations made in the complaint as true, particularly provided that defendant has submitted no evidence to refute it").  To hold otherwise would obviate the maxim that, at the Rule 12 stage, the court must accept each of a plaintiff's allegations as true.  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In any event, Conservit alleges the relevant terms of the agreements in its pleading, which the court undisputedly *must* consider at this juncture.

loan"). (Id. ¶ 13, Ex. A at 1). The parties agreed that the initial loan would be used "solely for the purpose of purchasing scrap metal which in turn was to be sold exclusively to [Conservit.]" (Id. ¶ 14, Ex. A at 1). On the same day, Deimler's Recycling executed a promissory note evidencing the loan and agreeing to repay Conservit pursuant to the SMPA, and Greg Deimler executed a guaranty, agreeing "to unconditionally, personally, and irrevocably guaranty the payment of all sums due to [Conservit] under the [SMPA]." (Id. ¶¶ 15-16; Exs. B-C).

The terms of the SMPA require defendants to provide enough scrap metal to Conservit weekly that it could deduct $5,000 from the value of the metal and apply that amount to the loan balance. (Id. ¶ 44). In addition, the note simultaneously executed with the SMPA requires defendants to make monthly installment principal and interest payments in the amount of $20,000. (Id. ¶ 45). According to Conservit, defendants provided enough scrap metal between June 7 and September 13, 2013, that Conservit was able to apply $70,000 against the initial loan balance. (Id. ¶ 46). Between September 10 and the filing of the complaint in this matter, defendants purportedly provided only $35,000 of scrap metal to Conservit–$80,000 less than the terms of the parties' agreements require. (Id. ¶ 49). According to the complaint, defendants did not make any of the requisite installment payments on the initial loan. (Id.)

In September of 2013, defendants again approached Conservit requesting an additional sum of $100,000 (the "second loan") to support further expansion of their business. (Id. ¶ 17). The parties executed a First Amendment to the SMPA ("SMPA

3

Amendment") on September 10, 2013, and Conservit's agreed to provide $100,000 to defendants. (<u>Id.</u> ¶ 18, Ex. D).  Deimler's Recycling simultaneously executed a second promissory note evidencing the loan and its repayment obligations, and Greg Deimler against executed a personal guaranty in favor of Conservit.  (<u>Id.</u> ¶¶ 19-20, Exs. E-F).  The terms of the SMPA Amendment reaffirm defendants' obligation to provide enough scrap metal to Conservit that it could weekly deduct $5,000 from the outstanding balance of the initial loan and second loan.  (<u>Id.</u> ¶ 48).  The second promissory note similarly requires defendants to make a monthly installment payment of $10,000.  (<u>Id.</u> ¶ 50).  Defendants did not make any of the requisite installment payments on the second loan.  (<u>Id.</u>)  On January 7, 2014, Conservit provided written notice of default to defendants in accordance with the terms of the SMPA and SMPA Amendment.  (<u>Id.</u> ¶ 52).

In addition to the SMPA and SMPA Amendment, Conservit alleges that defendants agreed to a series of oral contracts pertaining to numerous business operating loans ("business operation loans").  (<u>See</u> Doc. 1 ¶¶ 21-37).  At defendants' request, and in response to defendants' "cash flow" problems, Conservit made the following loans to defendants: (1) on August 7, 2013, a $25,000 loan; (2) on August 21, 2013, a $10,000 loan; (3) on August 26, 2013, a $10,000 loan; (4) on September 6, 2013, a $10,000 loan; (5) on November 1, 2013, a $20,000 loan; (6) on November 20, 2013, a $15,000 loan; (7) on November 22, 2013, a $15,000 loan; (8) on November 27, 2013, a $10,000 loan; and (9) on December 20, 2013, a $25,000 loan.  (<u>Id.</u> ¶¶ 22, 25, 28, 31, 33, 35).  Conservit alleges that each of the loans were to be repaid "at such time that

[defendants] were able to sell additional scrap metal to cover the loan." (Id. ¶¶ 23, 26, 29, 32, 34).  The defendants refuse to make payments on the business operation loans.  (Id. ¶¶ 60-61).

Conservit also alleges the existence of a contract (the "trailer loan") for defendants' purchase of van trailers.  (See id. ¶¶ 38-42).  According to the complaint, on October 10, 2013, Greg Deimler contacted Conservit and advised that defendants had the opportunity to purchase van trailers for $30,000 but lacked the necessary capital.  (Id. ¶ 38).  Conservit orally agreed to provide the $30,000 to defendants, and in exchange, defendants "were to deliver trailers to [Conservit] as payment for" the loan.  (Id. ¶¶ 39-40).  Conservit alleges that defendants have "made the following [t]railer [l]oan payments" to date: (1) on November 1, 2013, a $12,350 payment; (2) on November 27, 2013, a $5,750 payment; (3) on December 9, 2013, a $1,550.52 payment; and (4) on December 26, 2013, a $1,550 payment.  (Id. ¶ 41).  Conservit contends that defendants owe a balance of $8,799.48 on the trailer loan and have refused to remit final payment notwithstanding numerous requests.  (Id. ¶ 42).

Conservit filed its complaint (Doc. 1) in this matter on February 18, 2014, alleging claims for breach of the SMPA and SMPA Amendment (Count I), for breach of the business operation loans (Count II), and for breach of the trailer loan (Count III), and an alternative claim for unjust enrichment (Count IV) in the event that any of the primary contracts are found to be unenforceable.  On April 21, 2014, defendants responded with the instant motion (Doc. 6) to dismiss all of Conservit's claims.  The motion is fully briefed (Docs. 10, 12, 16) and ripe for disposition.

II.    **Standard of Review**[3]

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of pleadings that fail to state a claim for which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), the court must "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine

whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief."  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d

Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008));

also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher,

423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the

complaint, the court may also consider "matters of public record, orders, exhibits

to the complaint and items appearing in the record of the case."  Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben.

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  To test the sufficiency of the complaint, the court must conduct a three-

---

[3] The court's jurisdiction in the instant matter is premised on its power to hear claims by parties of diverse citizenship for amounts in controversy exceeding $75,000.  See 28 U.S.C. § 1332(a).

step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).
In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead
to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the
factual and legal elements of a claim should be separated; well-pleaded facts must
be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also
Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court
isolates the well-pleaded factual allegations, it must determine whether they are
sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing
Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege
facts sufficient to "raise a right to relief above the speculative level").  A claim "has
facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct
alleged."  Iqbal, 556 U.S. at 678.  When the complaint fails to present a *prima facie*
case of liability, courts should generally grant leave to amend before dismissing a
complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002);
Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III.   **Discussion**

Defendants' motion attacks the sufficiency of Conservit's breach of contract claims and its unjust enrichment claim pursuant to Federal Rule 12(b)(6).  The court addresses each argument, and Conservit's response thereto, *seriatim*.

### A.   **Breach of SMPA and SMPA Amendment**

Defendants contend broadly that Conservit fails to identify the "ongoing business relationship" between the parties which may modify the terms of the agreements and "the full nature of the consideration" supporting the agreements. (Doc. 10 at 8).  This argument misses the mark.  Defendants' position—indeed, the entirety of their challenge to this breach of contract claim—relies solely on facts outside of the record and Conservit's complaint.  (See id. at 8-9).  At this juncture, the court is tasked simply to determine whether the allegations of the complaint and the contents of exhibits attached thereto state a viable breach of contract claim. See Twombly, 550 U.S. at 570 (claim need only be "plausible *on its face*" to survive Rule 12(b)(6) motion (emphasis added)); see also  Gelman, 583 F.3d at 190 (court need only determine "whether, under *any reasonable reading of the complaint*, the plaintiff may be entitled to relief" (emphasis added)).  Conservit's pleading satisfies this threshold inquiry.

To prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must prove the following:  (1) the existence of a contract, including its essential terms; (2) defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach.  See Ware v. Rodale Press, Inc., 322

F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053,

1058 (Pa. Super. Ct. 1999)).  Conservit's complaint and the exhibits attached thereto

allege that: (1) the parties executed the SMPA and SMPA Amendment (Doc. 1 ¶¶

13, 18); (2) the SMPA and SMPA Amendment require Conservit to provide $400,000

and $100,000, respectively, to defendants, in exchange for defendants' supply of

$5,000 of scrap metal per month and monthly installment payments of $20,000 and

$10,000, respectively (id.); (3) Conservit remitted both sums to defendants consistent

with and in satisfaction of its obligations under the agreements (id.); (4) defendants

have failed to make any installment payments as required by the agreements (id. ¶¶

57, 51); (5) defendants only partially satisfied their scrap metal obligations under the

agreements (id. ¶¶ 46, 49); and (6) defendants' failure to satisfy their obligations has

damaged Conservit financially.  (Id. ¶¶ 55-56).  Conservit thus has pled the existence

of two contracts (the SMPA and SMPA Amendment), the essential terms of those

contracts (including the parties' respective obligations thereunder), defendants'

breach of its repayment obligation, and damages flowing from that breach.  Hence,

Conservit has amply satisfied its pleading obligation with respect to this claim.  See

Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 168 (3d Cir. 2014) ("At its core, a

breach of contract involves the nonperformance of any duty imposed by a contract

between parties.") (citing Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 467-68 (Pa.

Super. Ct. 2003)).

As noted, defendants contend that the complaint fails to fully explain the

nature of the parties' ongoing relationship and assert that said relationship negates

Conservit's claims.  (See Doc. 10 at 8-9).  Defendants also argue that the SMPA and

SMPA Amendment were not finalized, despite a clear integration clause, but fail to

identify any additional terms or provisions which were erroneously included or

mistakenly omitted from the contracts.[4]  (See id. at 3-4).  Such arguments, to the

extent appropriate, are necessarily fact-intensive and must be resolved at the Rule

56 stage, when the court has a fully developed factual record before it.  At this stage,

Rule 12 requires the court to accept as true the factual allegations of Conservit's

complaint.  Those allegations, deemed true, state a claim for breach of contract.

See Grudkowski, 556 F. App'x at 168; Ware, 322 F.3d at 225.  Because defendants'

entire argument is premised on facts extraneous to, and inferences unsupported by,

Conservit's complaint, the court will deny defendants' motion to dismiss Count I.

### B.     Breach of Oral Business Operation Loan Contracts

Defendants similarly contend that Conservit has insufficiently pled breach of

the business operation loan contracts subject to Count II of Conservit's complaint.

(Doc. 10 at 2).  According to defendants, Conservit "alleges no recitation of

repayment terms, and no evidentiary document" establishing the existence of these

agreements, and this evidentiary deficit is fatal to Conservit's claims.  (See id. at 2,

10-11).  For many of the reasons discussed *supra*, the court again must disagree.

---

[4] Such arguments necessarily raise parole evidence concerns.  However, defendants do not identify any erroneous inclusions or omissions, or specify exactly how the contract would have been different but for those errors.  Given the brevity of the parties' fleeting references to parole evidence, the court defers any ruling on parole evidence issues to the Rule 56 stage.

The pleading requirements for a breach of contract claim based on an oral agreement are identical to those for written agreements.  Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) ("While every element must be pled specifically, it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." (quoting J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).  "Clarity is particularly important" when a plaintiff alleges the existence of an oral contract. Pennsy Supply, Inc., v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006) (citing Snaith v. Snaith, 422 A.2d 1379, 1382 (Pa. Super. Ct. 1980)).  Plaintiffs need not enumerate every term "in complete detail, [but] every element must be specifically pleaded."  Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 658 n.20 (E.D. Pa. 2010) (quoting CoreStates Bank, 723 A.2d at 1058).

In support of its business operation loan claims, Conservit avers that: (1) on nine (9) separate occasions, defendants orally or via text message requested that Conservit advance funds to address defendants' "cash flow" concerns in exchange for defendants' promise to repay those funds (Doc. 1 ¶¶ 22, 25, 28, 31, 33, 35); (2) Conservit satisfied its obligation by providing the requested funds (id.); (3) each loan was to be repaid "at such time that [defendants] were able to sell additional scrap metal to cover the loan" (id. ¶¶ 23, 26, 29, 32, 34); (4) defendants were able to sell scrap metal to cover the loan balance but elected not to make payments (id. ¶ 60); and (5) defendants have failed and refuse to make payments on the business operation loans.  (Id. ¶¶ 60-61).  Conservit contends that it has suffered damages in

the amount of the outstanding balance of the business operation loans.  (Id. ¶¶ 58,

63).  These facts, deemed true, more than sufficiently establish the existence of a

contract, a specific obligation imposed upon defendants, and defendants' failure to

perform that obligation resulting in damage to Conservit.  At the Rule 12 stage,

these allegations satisfy Conservit's burden of pleading breach of an oral contract.

### C.      Breach of Trailer Loan Contract

Conservit's claim with respect to the trailer loan suffers a different fate.

According to the complaint, Conservit agreed to loan $30,000 to plaintiffs, and in

return, defendants were to provide trailers to Conservit as repayment.  (Doc. 1 ¶¶

39-40).  Conservit further allege that defendants made four (4) monetary payments

on the trailer loan totaling $21,200.52.  (Id. ¶ 41).  Conservit argues that defendants

owe a balance of $8,799.48 on the trailer loan, but that defendants refuse to make

final payment on the loan despite numerous requests  for payment.  (Id. ¶¶ 69-70).

The flaw fatal to Conservit's claim, as currently pled, is that it does not

identify any obligation in the oral contract that defendants' refusals have breached.

Neither does Conservit allege that a course of dealing[5] somehow modified the terms

of the original oral agreement, which requires payment in the form of van trailers.

Conservit simply avers that defendants were obligated to provide trailers, and that

defendants refuse to provide cash payments.  Without more, Conservit has failed to

identify any provision of the oral agreement that defendants have breached.  The

---

[5] The court makes no determination at this stage whether course of dealing
evidence would be admissible to modify the terms of the alleged oral agreements.

court will grant defendants' motion with respect to the trailer loan.  However, such dismissal shall be without prejudice to the filing of an amended complaint curing the deficiencies identified herein by the court.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (courts must liberally grant leave to amend "unless amendment would be inequitable or futile").

### D.   Unjust Enrichment

Conservit also asserts a claim for unjust enrichment arising out of each transactions identified *supra*.  (See Doc. 1 ¶ ¶ 73-81).  Defendants seek dismissal of Conservit's unjust enrichment claim, asserting that Conservit cannot seek relief on both breach of contract and unjust enrichment theories.  (See Doc. 10 at 12-13).  In reply, Conservit contends that its unjust enrichment claim is an alternative cause of action, in light of defendants' challenges to the validity of each of contract alleged by Conservit.  (See Doc. 12 at 20-21).

To prevail on a claim for unjust enrichment, Conservit must plead: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff."  EBC, Inc. v. Clark Bldg. Sys, Inc., 618 F.3d 253, 273 (3d Cir. 2010) (citing AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).  When the parties' relationship is clearly founded upon a written contract or otherwise express agreement, a plaintiff cannot recover on a theory of unjust enrichment.  See Leder v. Shinfeld, 609 F. Supp. 2d 386, 408 (E.D.

13

Pa. 2009) (quoting <u>Wilson Area Sch. Dist. v. Skepton</u>, 895 A.2d 1250, 1254 (Pa. 2006) (noting "the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon written agreement or express contract")). If the validity or enforceability of the contract is challenged, however, courts may entertain breach of contract and unjust enrichment claims simultaneously at the Rule 12(b)(6) stage. <u>See</u> <u>Grudkowski</u>, 556 F. App'x at 170 n. 8 (citing <u>Montanez v. HSBC Mortg. Corp. (USA)</u>, 876 F. Supp. 2d 504, 515-16 (E.D. Pa. 2012); <u>Premier Payments Online, Inc. v. Payment Sys. Worldwide</u>, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012); <u>Cornell Cos. v. Borough of New Morgan</u>, 512 F. Supp. 2d 238, 265-66 (E.D. Pa. 2007)); <u>Alpha Pro Tech v. VWR, Int'l, LLC</u>, 984 F. Supp. 2d 425, 446 (E.D. Pa. 2013) ("That [plaintiff] may not ultimately *recover on both* a breach of contract claim and an unjust enrichment claim does not impugn the well settled principle that under both federal law and Pennsylvania law a plaintiff *may plead* both.") (citing <u>Lugo v. Farmers Pride, Inc.</u>, 967 A.2d 963, 969-70 (Pa. Super. Ct. 2009)).

Defendants indeed dispute the enforceability of the parties' respective agreements. (<u>See</u> Doc. 16 at 6 (regarding the SMPA and SMPA Amendment, "defendants intend to dispute the finality and binding nature of this document at an appropriate stage of the pleadings"); <u>id.</u> at 7-8 & n. 3 (regarding oral contracts, noting that "such a contract, *if it existed*, may never have been breached," and questioning whether the contracts are supported by consideration)). Consequently, at this juncture, the court must allow Conservit to plead in the alternative both its breach of contract and its unjust enrichment claims. <u>See</u> <u>Grudkowski</u>, 556 F. App'x

14

at 170 n. 8; <u>Alpha Pro Tech</u>, 984 F. Supp. 2d at 446.  The court will deny defendants'

motion to dismiss Conservit's unjust enrichment claim.

IV.   **<u>Conclusion</u>**

For all of the foregoing reasons, the court will grant in part and deny in part

defendants' motion (Doc. 6) to dismiss, as fully explained herein.  An appropriate

order follows.


                              /S/ CHRISTOPHER C. CONNER
                              Christopher C. Conner, Chief Judge
                              United States District Court
                              Middle District of Pennsylvania


Dated:        September 23, 2014